UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ANTHONY RIOS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No: SA-05-CA-884-XR |
| | ) |
| CITY OF SAN ANTONIO, TEXAS; LARRY | ) |
| S. HAMILTON, Individually and in his | ) |
| Official Capacity; and CRAIG R. BOTTIGLIERI, | ) |
| Individually and in his Official Capacity, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

On this date, the Court considered Defendants Hamilton's and Bottiglieri's Motion for Summary Judgment (docket no. 56), Plaintiff's response thereto, and Defendants' reply. After careful consideration, the Court will dismiss as moot that portion of the motion pertaining to Plaintiff's claims against Defendant Bottiglieri and will deny the motion in all other respects.

**I. Background**

Plaintiff Anthony Rios filed his Original Complaint on September 16, 2005. That Complaint (docket no.1) remains the live pleading. In his detailed Complaint, Rios alleges that, on or about October 19, 2003, he arrived at his cousin's house and noticed several police cruisers and a large number of people gathered in front of the house. He alleges that he attempted to gain entry to the house to determine what had occurred. According to the Complaint, after Plaintiff encountered Defendant Bottiglieri, who told him to mind his own business, Plaintiff again inquired of his cousin's whereabouts and "officers" eventually told him to go inside the house. Plaintiff alleges that, as he hurried to the house, without warning, Defendant Hamilton grabbed Plaintiff by the arm "and proceeded to twist it behind his back placing him in handcuffs." Plaintiff alleges that "Defendant Hamilton informed Mr. Rios that he was disrupting their investigation and without

provocation threw him to the ground." Plaintiff alleges that "[s]everal other officers, including Defendant Bottiglieri, joined the fray and they all piled on top of Mr. Rios." Defendants then allegedly hog-tied the Plaintiff, picked him up, and carried him towards a police cruiser. However, before reaching the cruiser, Defendants allegedly slammed Plaintiff to the ground, breaking his arm. Defendants then allegedly ignored Plaintiff's cries of pain and threw him into the back of the cruiser, leaving him handcuffed despite the fact that his broken bone was protruding through his shirt. Defendants then allegedly left Plaintiff in the cruiser for some time. Plaintiff alleges that Defendants fabricated a cover story that Plaintiff had kicked out the window in their police cruiser, and Plaintiff was charged with criminal mischief. The charge was eventually dismissed, and Plaintiff alleges there was no damage to the window.

Plaintiff filed this action, alleging causes of action under 28 U.S.C. § 1983 for violations of his constitutional rights and state-law claims for false arrest and false imprisonment, intentional infliction of emotional distress, assault and battery, and malicious prosecution. Plaintiff alleged that his constitutional rights were violated by the officers acting under color of state law when they used excessive force, failed to intervene to prevent his injuries, unlawfully searched and seized his person, and falsely and maliciously charged him with the commission of a crime without probable cause. Plaintiff separated his § 1983 claims into claims based on "excessive force," unlawful "search and seizure," "false arrest and/or false imprisonment," and "malicious prosecution." Plaintiff sued Officers Hamilton and Bottiglieri in both their individual and official capacities.

On November 18, Defendant Officers Hamilton and Bottiglieri filed a motion to dismiss the federal and state claims against them in their individual capacities based on the defenses of qualified and official immunity. Defendants also asserted that Rios had failed to state a cause of action under § 1983 for malicious prosecution in light of the Fifth Circuit's decision in *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003). The Court denied the motion to dismiss the § 1983 claims other than malicious prosecution because Rios had stated facts that, if true, would survive a qualified immunity defense. However, the Court dismissed

2

Plaintiff's claim for § 1983 malicious prosecution, as set forth in ¶ 21(c) and ¶ 32 of the Complaint because Plaintiff failed to allege a constitutional deprivation associated with his malicious prosecution claim other than the deprivations under the Fourth Amendment.

On April 14, 2008, Defendants Hamilton and Bottiglieri filed the instant motion for summary judgment. After the motion for summary judgment was filed, Plaintiff nonsuited Defendant Bottiglieri. Accordingly, the portion of the Motion for Summary Judgment pertaining to Plaintiff's claims against Defendant Bottiglieri is moot. Plaintiff previously dismissed his claims against the City of San Antonio (which also included the claims against Hamilton and Bottiglieri in their official capacities). Docket no. 48. Thus, the only remaining claims are against Defendant Hamilton in his individual capacity under § 1983 for various violations of his Fourth Amendment rights (unreasonable search and seizure, including false arrest/false imprisonment; excessive force; and failure to intervene) and for the state-law claims of false arrest/false imprisonment, intentional infliction of emotional distress, assault and battery, and malicious prosecution.[1]

---

[1] In the motion for summary judgment, Defendant asserts that the only remaining claims are under § 1983 for excessive force and the state-law claims of false arrest, intentional infliction of emotional distress, and assault and battery. This is incorrect because it fails to include Plaintiff's state-law malicious prosecution claim and Plaintiff's § 1983 Fourth Amendment unreasonable search and seizure/arrest claims.

With regard to the state-law malicious prosecution claim, the Court dismissed Plaintiff's malicious prosecution claims *under § 1983* because the § 1983 claim failed to establish a constitutional violation. *See* docket no.7 at 5 ("The allegations contained in subparagraph (c) [of paragraph 21] are not actionable under section 1983 because falsely charging a person is not a violation of a specific constitutional provision."). The Court dismissed only Plaintiff's "claim for § 1983 malicious prosecution, as set forth in ¶ 21(c) and ¶ 32" of the Complaint. The Court did not dismiss Plaintiff's state-law malicious prosecution claim, which was alleged in paragraphs 41 and 42 of the Complaint.

With regard to the Fourth Amendment claims, the Court expressly noted that "Plaintiff's complaint that he was arrested without probable cause is actionable under the Fourth Amendment, as is his claim that excessive force was utilized during the arrest." *Id.* This would also include the failure to intervene claim (an aspect of the excessive force claim). The Court declined to dismiss any of the § 1983 claims under the Fourth Amendment, and dismissed only the § 1983 malicious prosecution claim. (The Court did note that Plaintiff would have to replead to state a due process claim, and because Plaintiff did not do so, Plaintiff has not stated a due process claim.)

**II. The Summary-Judgment Evidence**

In support of the motion for summary judgment, Defendants provide: (A) an SAPD report of aggravated assault, which describes the events (described by Defendants as a "riot among battling pugilists) that initially led the police to be in the area when Plaintiff arrived at his cousin's house; (B) SAPD Reports of the incident in question, which include a report by Officer Michael Starnes and a report by Defendant Larry Hamilton; (C) University Hospital Records of Plaintiff Rios indicating his blood alcohol level; (D) the deposition of Officer Hamilton; (E) the deposition of Officer Bottiglieri; and (f) the deposition of Plaintiff Rios. In his response to the motion for summary judgment, Plaintiff included two appendices. Appendix I contains Plaintiff's objections to Defendant's summary judgment evidence. Therein, Plaintiff objects to exhibits A, B, and C in their entirety. The Court need not rule on these objections because it is not relying on these exhibits in ruling on the instant motion. Appendix II is Plaintiff's Exhibit List in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment. It lists only the Declaration of Anthony Rios. Plaintiff's Response also heavily relies on Plaintiff's deposition testimony.

According to Plaintiff's deposition, on October 19, 2003, Plaintiff and his girlfriend got engaged during dinner at Applebee's. They called his cousin at her house and decided to "go over there and have a couple of drinks." When they arrived, there were "cops that were blocking the road" so Rios "had to go to the side and park." Rios stated that there were more than three patrol cars, and that he did not recall coming to a quick stop in front of the officers. He testified the he "got off the vehicle, approached an officer, asked him – he told me to – said rudely to go inside." Rios testified that he said, "Okay, I'm going inside. I just wanted to know what had happened." He also testified that he said, "You don't have to be rude about it." Rios testified that he did not remember the name of the officer that he spoke with and "to this day I probably don't even remember how they look." He testified that he was not shouting any obscenities at the officers.

Rios testified, "[W]hen I was approaching the door I felt my arm get grabbed and I got thrown down on the floor and I heard a pop. And that's when I kept telling them, 'Y'all broke my arm, y'all broke my

4

arm.' They wouldn't let me up. They were all on top of me." He testified, "I was walking to the door and I just felt my body twist and I just ate dirt." He could not recall if the officer said anything to him before grabbing his arm, and he did not remember which officer grabbed his arm. Rios further testified that his arm was broken during this initial encounter. He thought it was broken "right when I fell when they all got on top of me." He stated that there were more than two officers involved, but he did not know their names. Later, he stated more specifically that there were three officers on top of him. When asked whether the officer who arrested him was the one responsible for breaking his arm, Rios stated, "It was all – maybe all of them when I fell, I don't know. I can't – we can't really pinpoint which one, I don't – I really don't know which one broke my arm." When asked who initially grabbed him and took him to the ground, Rios stated that he "couldn't describe them." Rios described an older gentleman with salt and pepper gray hair (the Court notes that this could describe Defendant Hamilton) as "the closest one" but could not identify the three officers that "were on top of" him. He stated that one of the officers that initially arrested him was a heavy-set, older Hispanic. When asked if this officer grabbed him, Rios stated, "I have no idea who grabbed me. I don't know. Like I said, my back was turned." When asked, "So whoever the officer was that initially took you to the ground that broke your arm, you can't say who that officer was?", Rios replied "No, sir."

    Rios then testified that he was handcuffed while on the ground. He further testified that his feet were also handcuffed with chains, and that he was hog-tied with his hands behind his back and the handcuffs on his ankles. Rios stated that he did not know which officer hog-tied him and stated that he did not specifically recall ever talking to Officer Hamilton. He was then placed in the back seat of a patrol car. Rios testified at first that he did not kick out the window of the patrol car, stating, "I know I didn't pop out no window." Immediately thereafter, however, he stated that he did not know if he had and did not remember. He stated, "all I remember is that pain." Later in the deposition, he again stated that he did not remember what he did in the patrol car, but that he had seen the pictures of the damage to the window, and thought that if he were to try to kick the window out, there would have been a lot more damage to the window.

Rios stated that he was then taken out of the vehicle and placed on the ground next to the patrol car. He testified that, "when they dragged me out, they dragged me out head first and I fell face first again. I had scratches on my face." He also testified that he was thrown on the ground. He stated that he did not try to kick the officers.

Rios was arrested on a charge of criminal mischief. The officers called EMS and Rios was taken to the hospital, accompanied by one of the officers (according to Hamilton's deposition, this officer was Defendant Hamilton). After Rios was treated, he was taken to Frio, where his girlfriend bailed him out. Rios was appointed an attorney, and went to court on the criminal mischief charge.

In his Declaration (Appendix II to the Response), Rios states, "I have previously testified by deposition in this matter that I was arrested by an officer of the San Antonio Police Department who was an older gentleman with salt and pepper gray hair, matching the description of Defendant Larry S. Hamilton. During my deposition, I was not provided with a photograph of Defendant Hamilton or any other officers present during the incident. Furthermore, on August 19, 2004, Defendant Hamilton appeared at a custody hearing concerning my sons, Dylan Anthony Rios and Christian Ryan Rios. At that hearing, Defendant Hamilton testified concerning the events of October 19, 2003, and more specifically with his interaction with me. When Defendant Hamilton appeared and testified, I recognized him as one of the officers present on October 19, 2003, and as being one of the individuals responsible for my injuries."

### III. Analysis

Defendant Hamilton moves for summary judgment on the bases of qualified and official immunity. According to Defendant, he initially confronted Rios upon his arrival because he was shouting obscenities and told him to either leave or go inside the residence. Hamilton states that he did not observe Rios again or have any contact with him until after Officer Garza had detained him, handcuffed him, and placed him inside Hamilton's cruiser. Hamilton states that he observed Rios in the patrol car trying to kick out the back window, and that he, Garza, and Officer Boiselle pulled Rios from the patrol car to prevent the window from

being further damaged. Hamilton stated that Rios was kicking, and they lost their grip on him, dropping him to the ground and breaking his arm at that time. Defendant recognizes that "[t]he case at bar presents two versions of events as to how Plaintiff fractured his right arm. Plaintiff Anthony Rios' version of the incident is that he was approaching the door of the residence of his cousin at such time as an officer grabbed his arm, threw him on the floor and broke his arm at that time." However, Defendant Hamilton states that Rios did not know the name of this officer, and that the officer was in fact Officer Garza. Thus, Hamilton asserts, Officer Garza was the officer responsible for fracturing his arm. Hamilton asserts that he is entitled to qualified immunity because, when he observed Plaintiff attempting to kick out the window of his patrol car, he tried to remove him, and during the struggle Plaintiff accidentally fell to the ground. Hamilton asserts that "in this version of events, Officer Hamilton did not commit excessive force in violation of Section 1983 nor did he commit any intentional tort."

Plaintiff responds that "Hamilton admits physical contact with Plaintiff upon removal from a vehicle and that a fact issue exists regarding the physical contact prior to such time." Plaintiff asserts as "uncontested facts" that: (1) "As Plaintiff attempted to open the front door to his cousin's residence, he was grabbed from behind by Defendant Hamilton who proceeded to twist his arm behind his back."; (2) Defendant Hamilton forcibly threw Plaintiff to the ground; (3) Defendant Hamilton jumped on top of him; (4) Defendant Hamilton hog-tied him; and (5) Plaintiff pleaded with Defendant Hamilton and the other officers for medical attention for his arm, but they ignored him and threw him into the back of the cruiser. Of course, Hamilton's deposition testimony contradicts all of these purportedly "uncontested facts." Further, the deposition testimony cited by Plaintiff in support of these "uncontested facts" does not directly support Plaintiff's assertion that it was Defendant Hamilton, as opposed to one or more other officers, who committed any of these acts. Rather, Rios's deposition testimony states only that Rios did not know which officer grabbed him or which officers jumped on top of him, hog-tied him, or placed him in the cruiser.

In his Reply, Hamilton argues that Rios "can do no more than place Officer Hamilton at the scene"

and that he identified the defendant officers involved in his detention by pulling their names from the police reports. Hamilton argues that the evidence "taken as a whole reveals that Officer Garza was the San Antonio Police Officer who detained, handcuffed, and placed Plaintiff Rios in the patrol car" and that, if "as Plaintiff alleges, his arm was broken during this initial detention and handcuffing, then Officer Garza was the San Antonio Police Officer involved in the incident described." Hamilton asserts that Plaintiff "shotgunned" his Complaint and included defendants who were not involved in the injury and contends that Plaintiff has produced no direct evidence linking Officer Hamilton to the allegation of excessive force in the Complaint.

### A. Qualified Immunity

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995) (citation and internal quotations omitted). The burden is on the plaintiff to overcome a defendant's defense of qualified immunity. *Burnes-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994). To do so, the plaintiff must show that the defendant violated clearly established law and that the defendant's conduct was not objectively reasonable. *Id.* The Fifth Circuit has held that "qualified immunity is a shield from civil liability for 'all but the plainly incompetent or those who knowingly violate the law.'" *See Jones v. City of Jackson*, 203 F.3d 875, 883 (5th Cir. 2000).

**1. Excessive Force**

Rios contends that the situation here is basically a factual dispute, which must be resolved in Plaintiff's favor. The real issue here, however, is whether Plaintiff has provided sufficient summary judgment evidence to raise a fact issue concerning *Defendant Hamilton's* involvement in the alleged constitutional violations. Taking Plaintiff's alleged facts as true, he unquestionably alleges a violation of clearly established constitutional rights by one or more officers. The difficult question, however, is whether he alleges sufficient facts demonstrating that it was Defendant Hamilton, as opposed to some other officer,

who violated his rights during the initial detention.

Hamilton admits being involved in removing Rios from the cruiser, and the facts are disputed concerning how that removal was conducted. Assuming Rios's version of the facts to be true – that he was pulled out head first, was not resisting or kicking, and was thrown down to the ground – Rios has alleged sufficient facts to survive summary judgment on this aspect of his excessive force claim (though, the Court notes that, according to Rios, this only scratched his face and did not cause his broken arm).

With regard to Hamilton's involvement in the initial detention, Rios casts some doubt on Hamilton's version of the events, arguing that, if Hamilton was only ten to fifteen feet from his cruiser the whole time as he testified, then he would have noticed the allegedly loud and belligerent Rios being placed inside (especially since he could hear Rios kicking the window) and that, though Hamilton claims to have been interviewing witnesses during Rios's initial detention, he has not produced corroborating evidence to support that, indicating that he was actually involved in Plaintiff's initial detention. Further, though Rios has not produced any direct evidence to link Hamilton to the initial detention, he has produced some circumstantial evidence (though slight). Specifically, Rios states that he spoke to Hamilton and then proceeded to the house, when he was grabbed and taken down to the ground by three officers. He cannot say with certainty that Hamilton was involved, but he did say that Hamilton was the closest officer at the time, and this may raise an inference that Hamilton was involved. Moreover, Plaintiff asserts a § 1983 claim for failure to intervene.[2] Plaintiff has presented sufficient evidence that Defendant Hamilton was present near the incident in question. The same circumstantial evidence that supports an inference that Hamilton was involved in the initial detention supports the inference that, even if he was not directly involved, he was present and failed

---

[2] An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). A bystander liability claim requires the plaintiffs to show that the officer was present at the scene and did not take reasonable measures to protect a suspect from excessive force. *Ibarra v. Harris County, Tex.*, 243 Fed. Appx. 830 n.8 (5th Cir. 2007).

to intervene.³  Plaintiff may proceed to trial on the alternative theories that either Hamilton was directly involved in the initial detention or, if he was not, he was present and failed to intervene.

Because fact issues exist concerning Plaintiff's removal from the patrol car and the facts taken in Plaintiff's favor indicate the use of excessive force, this aspect of Plaintiff's excessive force claim survives summary judgment.  Further, because Plaintiff has produced sufficient evidence to lead a juror to reasonably infer that Defendant Hamilton was also involved in the initial detention that Plaintiff alleges caused his broken arm, this claim also survives summary judgment.  Last, Plaintiff has produced sufficient summary judgment evidence to also proceed to trial on the alternative failure to intervene excessive force claim.

Defendant Hamilton's motion for summary judgment on Plaintiff's § 1983 claims of excessive force is denied.

**2. Unreasonable search and seizure/false arrest and false imprisonment**

Paragraph 22 of Plaintiff's Complaint alleges that he was subjected to an unreasonable search and seizure, that his expectation of privacy was violated, and that he was detained without reasonable suspicion or probable cause.  Paragraph 26 alleges that the search of Mr. Rios was conducted in an unnecessarily cruel, painful, and/or dangerous manner.  Paragraph 30 alleges that Defendants violated Plaintiff's Fourth Amendment rights when he was unreasonably falsely arrested and detained.  Specifically, Plaintiff alleges that no reasonably competent officer would have concluded that a mere conversation warranted Rios's arrest.

Defendant Hamilton has not expressly moved for summary judgment on these claims.  However, the Court's review of the evidence indicates that the unreasonable seizure claims should survive summary judgment.  Taking Plaintiff's version of the facts as true, the officers did not have a reasonable suspicion to initially detain him, and the manner of the detention was unreasonable.  Though Defendant Hamilton denies

---

³Rios's declaration that he recognized Hamilton as being "one of the individuals responsible for his injuries" is somewhat ambiguous because it could be referring only to his removal from the patrol car. However, construed liberally in Rios's favor, it is further evidence in support of Plaintiff's claim that Hamilton was involved.

that he was involved in the original detention, the Court has already concluded that a fact question exists on that issue. Further, it appears that Hamilton was involved in Plaintiff's arrest for criminal mischief related to his kicking out the cruiser window. Taking the facts in the light most favorable to Plaintiff, however, Plaintiff did not kick out the window, and no probable cause existed for the arrest. Accordingly, the unreasonable seizure/false arrest claims under § 1983 may proceed to trial.

Plaintiff has provided no evidence, however, concerning any unreasonable search. Accordingly, the Court will raise the issue of the propriety of summary judgment on this claim *sua sponte*. Plaintiff should be prepared to discuss the viability of this claim at the pretrial conference.

### B. Official immunity (state-law tort claims)

As noted, Plaintiff has asserted state tort claims for false arrest/false imprisonment, intentional infliction of emotional distress, assault and battery, and malicious prosecution. Defendant Hamilton moves for summary judgment on the state tort claims based on official immunity.

Texas's law of official immunity "is substantially the same as federal immunity law." *Cantu v. Rocha*, 77 F.3d 795, 808 (5th Cir.1996). Therefore, the Court denies Hamilton's motion for summary judgment based on official immunity for the same reasons discussed above.

### IV. Conclusion

"Defendant Larry S. Hamilton and Officer Craig R. Bottiglieri's Motion for Summary Judgment" (docket no. 58) is DISMISSED AS MOOT IN PART with regard to Plaintiff's claims against Defendant Bottiglieri and DENIED IN PART with regard to Plaintiff's claims against Defendant Hamilton.

SIGNED this 16th day of May, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE